NEWPORT SC.

William H. Gill et al
      vs.      Appeal No. 1995
Town Council of
Town of Jamestown

January 27, 1926

BLODGETT, J. Heard jury trial waived.

This is an appeal from an order of the town council of Jamestown confirming a report by a committee of three persons appointed by said council directing said committee to survey, bound and, mark out Narragansett Avenue, in the town of Jamestown, and to report thereon.

Narragansett Avenue runs east and west across the Island of Conanicut from sea to sea, and is located in the town of Jamestown. It is an ancient highway and the principal highway on the island, running from the East to the West Ferry. The history of the highway is completely set out in the case of Horgan vs. Town Council of Jamestown, 32 R. I.

528, and the way was first established in 1709.

It appears upon a plat in the present case, being appellants' Exhibit "A".

This plat shows a way running straight from sea to sea four rods (66 ft.) in width, and known as "The Proprietors' Plat." It was made by John Mumford and bears date September 8, 1709. As said in the Horgan case, 32 R. I. 535, by the Court, referring to this same plat:

"From these records it is established that in 1709 a highway was laid out of the width of four rods, running across the town of Jamestown from east to west, from sea to sea; and that it was laid out across the land which the proprietors of the town held in common. This highway became known as Ferry Road, connecting the ferry to Newport with the one to the main land in the west. It was afterwards named Narragansett Avenue. It still remains the principal highway of the town across the island of Conanicut."

The vote of the council directing the work is:

"Voted: that that portion of Narragansett Avenue extending westerly from the westerly side of Ocean avenue to the sea be surveyed, bounded and marked out, and that Isaac H. Clark, William L. Arnold and Albert A. Boone, of the town of Jamestown, be and are hereby appointed a committee to survey, bound and mark out said portion of said Narragansett avenue extending westerly from the westerly side of Ocean Avenue to the sea, according to law, and that they report their doings to this council together with a plat thereof * * * "

Under this vote the first duty of the committee was to determine the point where the northerly line of Narragansett avenue intersected the westerly line of Ocean avenue. The committee proceeded to the location

and Gardner C. Easton, engineer for the town, placed a stake at a point marked "A" on a plat filed as appellees' Exhibit 9; by driving a stake into the ground under the direction of the committee at a hedge planting at that location as, indicated by the dotted lines as they appear upon the plat at the corner of Ocean Avenue, and Narragansett Avenue. (QQ 35, 36 and 37, page 59). This was the starting point of the survey. He further testified there was no definite fence line at that location. The engineer then followed the fence lines westerly as forming the north line of Narragansett Avenue, and says: "It was the best average line they could get considering the fences, as they were built." (Q 41, p. 60). In other words, the engineer followed the occupation lines of owners whose land bounded on the northerly line of Narragansett avenue.

In the briefs filed by appellants and appellee, it is assumed that the town in this proceeding acted under Sec. 28 of Chapter 92 of the General Laws (1923), which provides that town councils may mark out, relay, widen, straighten, change the location or abandon the whole of or any part of any highway or driftway". In the Horgan case (p. 532) the Court says: "Indeed, a town council having the management of the prudential affairs and interests of the town, and having the care of the highways of the town, in the absence of special statutory authority therefore would have the power, without notice and in such manner as it saw fit, to survey, bound and mark out the lines of an existing highway, and to take action to prevent encroachment and to remove obstructions upon the same".

There is no statute which directly authorizes a town council to "survey, bound and mark out" but it is apparent that the town council has the power to survey, bound and mark out an existing highway for the benefit of the citizens of the town.

The first objection to the action of the council by appellants is that the committee proceeded without a "warrant", but the Court is of the opinion that the committee could have proceeded to carry out the orders of the council without any formal warrant.

The second objection is: the committee did not proceed to survey, bound and mark out an old, or existing highway, but attempted either to lay out a new highway or to alter the layout of the original highway.

This leads to a consideration as to how the lines on the plan accompanying the report, and confirmed by vote of the town council, were determined. Appellee's Exhibit 9 is a blue print copy of the plan filed by the committee, with certain marks made upon the same in the course of the trial.

The history of Narragansett Avenue begins in 1709 with the adoption of the Proprietors' Plat (Appellants' Exhibit A). The way on this plat scales 66 feet in width and runs in a straight line holding such width from sea to sea. (Testimony of Lawton, C. E. p. 108). The right of the public in this way can not be lost by non user or adverse possession however long continued.

Simmons v. Crowell, 1 R. I. 519;
Almy v. Church, 18 R. I. 183;
Knowles v. Knowles, 25 R. I. 325.

For a long period the public enjoyed a right of way across the Island four rods in width. The testimony shows that the southerly line on the plan (Appellee's Exhibit 9) was determined as follows:

Gardner C. Easton, civil engineer for the committee, testified that Appellee's Exhibit 56 is a copy of the plan filed by the committee with the addition thereto of certain characters designating certain monu-

ments; that in 1914 he placed certain monuments on the northerly line of Bungalow Park land in the course of a survey made for the owner; that these monuments are shown on Appellee's Exhibit 56; that he has designated by an arrow two places designating the bad stones of an old wall. He further testifies that Appellee's Exhibit 57 was drawn by him from field notes of his father, a civil engineer, from a survey made January 18, 1899, showing the southerly line of Narragansett Avenue from west of Ocean Avenue to the embankment at the sea; that the line of the old wall appears on the eastern end of this southerly line; that the width of Ferry Road (Narragansett Avenue) on this plan at Ocean Avenue is 63 feet, and at the westerly end 64.3 feet; that the Bungalow Park land bounds northerly on Narragansett Avenue from the sea easterly to a point east of Ocean Avenue; that he determined the southerly line on the plan filed by the committee by running a line from the sea through these monuments on the northerly bounds of Bungalow Park; that the north line on the committee plan was determined by him as set forth on page supra, following the existing fence (occupation) lines of abutters thus marking out a way having an average width of about 60 feet. He accounts for the variations of width in the way marked out by saying, "The south line is a straight line and the north one is not so well established. The fences were built in portions I suppose by the various owners." (Q. 51 of record) Easton further testifies as to certain yellow lines drawn by him on Apllellee's Exhibit 9; that the solid yellow line south of the southerly line of the way marked out by the committee was a line along the northerly faces of the bed stones of the old wall; that the dotted yellow line on the north was a line parallel to

and sixty-six feet north of the solid yellow line on the south; that the northerly and southerly lines determined upon by the committee diverge somewhat to the northwest from the yellow lines; that at a point opposite the easterly gate post of the Bucklin Estate (the estate on the northeast corner of Ocean Avenue) the stone wall formed the southerly boundary of the highway (see answer to C. Q. 180).

Thomas C. Watson, a resident of Jamestown for eighty-seven years, testified for appellants that he formerly owned the land now known as Bungalow Park, and that the northerly boundary of his land was a stone wall that extended from the bank overlooking Dutch Harbor easterly to a point beyond Marine Avenue (Appellee's Exhibit 9); that he planted some locust trees north of this wall in the highway, one of which is still standing; that the stones of this wall had been carried away from time to time.

William H. Lawton, civil engineer, testified for the appellants of a survey made by him of Narragansett Avenue; that on the south side he found the bed of stones of the old wall and was able to trace these stones in a straight line running easterly to a point east of Ocean Avenue; that he took the northerly faces of these bed stones in determining the southerly line of the highway.

From this testimony it is evident that this all ran due west at one period and formed the southerly side of Narragansett Avenue, from a point on Ocean Avenue to the embankment long before the southerly line of the highway marked out by the committee was determined. It is further evident that on the south side the present line of the Bungalow Park land is north of the line of the old stone wall. It is further evident that in 1899 the width of the highway

from Ocean Avenue west had shrunk from sixty-six feet to about sixty-four.

It is claimed on the part of appellee that all the lines of the highway as marked out by Mr. Easton are within the sixty-six feet of the original highway.

It is claimed by appellee that the method followed in the present case by the council is the same as in the Horgan case, and that the Supreme Court sustained this contention. The Court has read the transcript of evidence in the Horgan case and does not find that certain issues that arise in the present case were in issue in that case.

In the Horgan case the Court says: "The vital question in the case, therefore, is whether any of the land included within the lines of the description contained in the report of the committee belonged to this appellant or was all part of an existing highway".

Horgan vs. Jamestown, 32 R. I. foot of page 532.

The Court then proceeds to discuss the testimony and reaches the conclusion that the land claimed by the appellant was part of the highway. That was the only issue in the case. All that is said by the Court relative to the lines of the highway is this (p. 541):

"The action of the town council was a definition of the lines of an existing highway and the procedure prescribed in Chapter 71, General Laws, 1896, for the layout of highways was not applicable to this proceeding".

Is the power lodged in a town council to determine and mark out lines of an existing highway not in accord with the original lines of such highway?

The report of the committee, viewed in the light thrown upon the same by the testimony, discloses that the line of the highway upon the northerly side was determined by the fence lines of the abutters, and on a portion of the southerly line by monuments placed by said engineer in 1914 on what was claimed to be the northerly line of Bungalow Park Plat. The committee thus marked out as the existing highway a way having an average width of 60 feet, such width being determined by the occupation line of owners of land on the north side and the north line of Bungalow Park on the south side. By reference to the plat (Appellee's Exhibit 9) it plainly appears that the width varies as the occupation lines vary.

Of course the town council has no power to give any land belonging to the public to any abutters upon the highway.

As said in Almy vs. Church, 18 R. I. 187: "Individuals may reasonably be held to a limited period to enforce their rights against adverse occupants, because they have interest sufficient to make them vigilant; while in public rights of property each individual feels but a slight interest and will tolerate a manifest encroachment rather than seek a dispute to set it right; that public policy requires the preservation of public rights and that the municipality can not by permissive neglect invest an intruder with title to a public highway".

The town council directed the committee named to survey, bound and mark out a certain part of Narragansett Avenue. In the Horgan case it has been determined that this means the marking out the lines of an existing highway, and in the same case it is determined that this highway was laid out from sea to sea of a width of four rods. The committee has marked out a highway of an average width of sixty feet. It has further marked out a highway the lines of which at the westerly end diverge from a straight line slightly to the northwest. The town

council has certainly not marked out Narragansett Avenue as that avenue existed when laid out.

It remains to consider the question of the validity of the action of the town council.

There is no testimony in the record that rebuts the testimony that the southerly line of Narragansett Avenue ran from opposite Ocean Avenue, westerly along the northerly face of an old wall to a bank overlooking the sea, in that locality called Dutch Harbor. There is further testimony on the part of Mr. Easton of a tracing made by him from notes of his father, a civil engineer, showing Narragansett Avenue as having in places a width of sixty-six feet, and that the south line of the tracing made from his father's notes of a survey of Narragansett Avenue shows said line following the face of the old stone wall (p. 62). This wall on the south side had been in existence for many years and was regarded as the southerly bound of the highway.

The Court considers it proved beyond doubt that this wall indicated the southerly bound of Narragansett Avenue and is the only line that is definitely shown to be an existing line of the highway; that the line determined by the committee as the southerly line is two or three feet north of this line: that the existing highway ran straight from sea to sea with a width of four rods (66 feet); that the lines determined by the committee are not the lines of the existing highway and do not delineate a way running straight across the island from sea to sea. The committee reports that under the marking out as effected by the committee no abutter has suffered any damage.

If the action of the committee be sustained, and the lines delineated declared to be the lines of Narragansett Avenue, the public will be deprived of the use and enjoyment of a strip of land about 6 feet in width

extending westerly from Ocean Avenue to the sea, and deprived of the same in a way not provided by any known law or statute.

Should the lines determined upon by the committee, and confirmed by the town council, and delineated upon the plan filed in the records of the town be sustained by the Court, the public in traveling upon such highway would be restricted to the use of a highway sixty feet in width, whereas a way sixty-six feet in width was dedicated to the public and such dedication lawfully confirmed by the properly constituted authorities. If the town council has the power to reduce the width of the highway six feet under the proceedings taken, it would have the power to reduce it twenty feet and so on "ad infinitum". The town council has no such power delegated to it. The land on either side of the lines so marked out by the town council still belongs to the public and it is conceivable that the town council might be compelled by the public to include this land in Narragansett Avenue.

The Court is of the opinion that the committee appointed to survey, bound, and mark out Narragansett Avenue westerly from the westerly side of Ocean Avenue to the sea failed to follow the orders and directions of the town council apointing it for that purpose, in this, that it has not surveyed, bounded and marked out Narragansett Avenue, an existing highway running from sea to sea with a width of four rods, dedicated to public use and confirmed by the properly constituted authorities in 1709, but has surveyed, bounded and marked out Narragansett Avenue as a highway of an average width of sixty feet from Ocean Avenue westerly to the sea, and that the town council in confirming the report and plan filed by said committee acted illegally and

the proceedings were unwarranted in law.

The motion of the appellants to quash the proceedings of the town council is granted.

For Appellants: Burdick & MacLeod.

For Appellees: Max Levy and Sheffield & Harvey.